```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------- x
STOLT-NIELSEN SA, STOLT-NIELSEN         :
TRANSPORTATION GROUP LTD., ODFJELL      :
ASA, ODFJELL SEACHEM AS, ODFJELL USA,   :
INC., JO TANKERS BV, JO TANKERS,        :
INC., and TOKYO MARINE CO., LTD.,       :    06 Civ. 420 (JSR)
                                        :
             Petitioners,               :    OPINION AND ORDER
                                        :
         -v-                            :
                                        :
ANIMALFEEDS INTERNATIONAL CORP. and     :
KP CHEMICAL CORP.,                      :
                                        :
             Respondents.               :
--------------------------------------- x
```

JED S. RAKOFF, U.S.D.J.

Animalfeeds International Corp. and KP Chemical Corp. filed federal suits alleging that Stolt-Nielsen SA et al. (collectively "Stolt") violated the antitrust laws in ways that caused respondents to overpay for the shipment of various items in parcel tankers owned or operated by Stolt and others. Their suits, along with certain similar actions brought by other plaintiffs, were consolidated for pretrial proceedings and transferred to the District of Connecticut. Stolt then moved to compel arbitration of the plaintiffs' claims pursuant to the arbitration clauses in the plaintiffs' respective shipping agreements with Stolt. The Court of Appeals held that all claims were arbitrable, and referred the matter to arbitration. JLM Industries, Inc. v. Stolt-Nielsen S.A., 387 F.3d 163 (2d Cir. 2004).

Animalfeeds International Corp. and KP Chemical Corp. then filed a Consolidated Demand for Class Arbitration on May 19, 2005, asserting claims on behalf of themselves and a class consisting of

-1-

"[a]ll direct purchasers of parcel tanker transportation services globally for bulk liquid chemicals, edible oils, acids, and other specialty liquids from [Stolt] and their co-conspirators (the "Class"), at any time during the period from August 1, 1998 to November 30, 2002 (the "Class Period")."  Stolt objected, arguing that they never consented to class arbitration.

Each contract here in issue contains one of two standard maritime arbitration clauses, neither of which expressly permits class arbitration.[1]  See Animalfeeds Int'l Corp. et al. v. Stolt-Nielsen SA et al. Partial Final Clause Construction Award (Dec. 20, 2005) (the "Award"), at 5.  The arbitrators — a distinguished panel comprised of Gerald Aksen (Chair), Kenneth R. Feinberg, and William

---

[1] The contracts between Stolt and Animalfeeds International Corp. contain the "Vegoilvoy Clause," which reads as follows: "Any dispute arising from the making, performance or termination of this Charter Party shall be settled in New York, Owner and Charterer each appointing an arbitrator, who shall be a merchant, broker or individual experienced in the shipping business; the two thus chosen, if they cannot agree, shall nominate a third arbitrator who shall be an Admiralty lawyer. Such arbitration shall be conducted in conformity with the provisions and procedure of the United States Arbitration Act, and a judgment of the Court shall be entered upon any award made by said arbitrator."
   The contracts between Stolt and KP Chemical Corp. contain the "Asbatankvoy Clause," which reads as follows: "Any and all differences and disputes of whatsoever nature arising out of this Charter shall be put to arbitration in the City of New York or in the City of London whichever place is specified in Part I of this charter pursuant to the laws relating to arbitration there in force, before a board of three persons, consisting of one arbitrator to be appointed by the Owner, one by the Charterer, and one by the two so chosen. The decision of any two of the three on any point or points shall be final."

R. Jentes (the "Panel") — nonetheless held that the clauses, though silent, permit class arbitration. Id. at 7-8.

Stolt now moves to vacate the Award, arguing that the Panel's decision was made in manifest disregard of the law. See Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S, 333 F.3d 383 (2d Cir. 2003). Given the very broad latitude accorded arbitration awards, the doctrine of "manifest disregard" is to be invoked in exceptional circumstances only. Id. at 389. Specifically, to vacate an arbitration award for manifest disregard of the law, the Court must find "both that (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case." Halligan v. Piper Jaffray, Inc., 148 F.3d 197, 202 (2d Cir. 1998). Here, regretfully, the Court is forced to conclude that both these elements have been established.

The Panel begins its discussion in the Award by asserting that "resolution of the foregoing issue [of whether the clauses permit class arbitration] is controlled by the Supreme Court's decision in Green Tree Fin. Corp. v. Bazzle, 539 U.S. 444 (2003)." Award at 4. But, even if, as the Panel also suggests, "the parties agree" that Bazzle governs the issue, id., that underlying assertion is plainly wrong, and no "agreement" can make it right: for Bazzle decided only that the issue was for the arbitrator in the first instance and remanded for that purpose. Id. at 454.

-3-

As for the related questions that Bazzle failed to resolve —
whether the Federal Arbitration Act (which provides for federal
enforcement of arbitration provisions in contracts involving
commerce, as in Bazzle, or in maritime contracts, as here, see 9
U.S.C. § 2) precludes class actions and preempts state law — the
Panel here did not reach them; and since they involve unsettled law
they are not before this Court on a claim of "manifest disregard."
But what the Court cannot ignore is that the Panel, proceeding on the
mis-assumption that Bazzle "controlled" the issue of whether the
clauses here permitted class actions, see Award at 4, failed to make
any meaningful choice-of-law analysis but simply made vague and
passing reference to its belief that its analysis of Bazzle is
"consistent with New York law as articulated by the Court of Appeals
in Evans v. Famous Music Corp., 1 N.Y.3d 452 (2004) and with federal
maritime law."  Award at 4.

In actuality, the choice of law rules in this situation are
well established and clear cut.  Because the arbitration clauses here
in issue are part of maritime contracts, they are controlled in the
first instance by federal maritime law.  As Stolt correctly argued to
the Panel, "because these are federal maritime contracts, federal
maritime law should govern."  Stolt's Arb. Opp. at 7 n.13.  See I/S
Stavborg v. National Metal Converters, Inc., 500 F.2d 424 (2d Cir.
1974); In re Finagrain Compagnie Commerciale Agricole et Financiere
S.A., 1980 U.S. Dist. LEXIS 9347 (S.D.N.Y. 1980).[2]  That law provides

---

[2] None of the contracts has an overall choice of law
provision.  While the Vegoilvoy Clause states that the

that a court sitting in admiralty applies state law unless there is an established federal maritime rule governing the issue in dispute or the court wishes to fashion such a rule. See Wilburn Boat Co. v. Firman's Fund Ins. Co., 348 U.S. 310, 316-17 (1954).

Here, Stolt forcefully brought to the attention of the Panel that there was such a rule. As the Panel states:

> Respondents [Stolt] point out, and Claimants [the respondents here] do not dispute, that the two arbitration clauses are part of a long tradition of maritime arbitration peculiar to the international shipping industry. Among other things, the clauses are part of standard contract forms developed by charterers and widely used by them and their brokers for 30 years. According to Respondents, the vast majority of these charter agreements have been entered into by foreign entities, pertaining to shipments between two foreign ports and requiring arbitration to be held outside the U.S. Respondents further assert, again without dispute from Claimants, that these arbitration clauses have never been the basis of a class action. Moreover, Respondents presented declarations and testimony from two experts in international maritime arbitrations to the effect that sophisticated, multinational commercial parties of the type that are sought to be included in the class would never intend that the arbitration clauses would permit a class arbitration.

Award at 6-7.

The Panel, however, although acknowledging "the forcefulness with which [Stolt] presented this argument," id. at 7, found it unpersuasive when weighed against the contract interpretation the

---

"arbitration shall be conducted in conformity with the provisions and procedures of the United States Arbitration Act," there are no such provisions or procedures that expressly deal with class actions, so that, at most, this simply raises the issues not addressed either in Bazzle or by the Panel, and therefore not before the Court here. As for the Asbatankvoy Clause, it merely specifies that whatever "laws relating to arbitration" are "in force" in the City of New York will govern, which could include federal, maritime, state or even local city substantive law, or federal or state procedural law.

-5-

Panel believed was mandated by Bazzle.  Id.  But if, instead, the Panel had made the choice-of-law analysis that it was mandated to make but chose to ignore, it would have had to recognize that what Stolt presented was tantamount to an established rule of maritime law.  For in the maritime area, more than perhaps any other, the interpretation of contracts — and especially charter party agreements — is very much dictated by custom and usage.  See, e.g., Orvig's Dampskibselskab Aktieselskab v. Munson S. S. Line, 16 F.2d 957, 958 (2d Cir. 1927); Schoonmaker-Conners Co. v. Lambert Transp. Co., 269 F. 583, 585 (2d Cir. 1920); Samsun Corp. v. Khozestan Mashine Kar Co., 926 F. Supp. 436, 439 (S.D.N.Y. 1996).  Indeed, it could hardly be otherwise, for the international and transient nature of maritime commerce renders the development of binding rules of custom absolutely necessary if the business is not to devolve into chaos.

The Court finds, therefore, that the arbitrators manifestly disregarded a well defined rule of governing maritime law that precluded class arbitration under the clauses here in issue and that their decision to the contrary must therefore be reversed.

It remains to add, moreover, that the result would be the same even if there was no established maritime rule and state law then governed.  For, as the parties here agree, the governing law would then be the law of New York.  Perhaps implicitly recognizing as much, the Panel noted, as quoted above, that their approach, while in their view dictated by Bazzle, "is also consistent with New York law as articulated by the Court of Appeals in Evans v. Famous Music

Corp., 1 N.Y.3d 452, 775 N.Y.S.2d 757 (2004)...." Award at 4. But the Panel offered no "jump cite" for this assertion, and on any fair reading of Evans its reasoning, if anything, supports Stolt's view of the law, rather than the Panel's.

The issue in Evans was whether a standard royalty provision that entitled certain songwriters to half of all net sums "actually received by the [publisher] with respect to such song or musical composition from any other source or right now known or which may hereafter come into existence," Evans v. Famous Music Corp., 1 N.Y.3d 452, 455 (2004), entitled the songwriters to half of certain U.S. tax savings that the publisher obtained as a result of foreign tax credits it received by paying foreign taxes on its foreign income derived from the compositions in question. Finding the contract ambiguous on this issue, the Court of Appeals "turn[ed] to extrinsic evidence," id. at 459, and found that "industry custom and practice," as well as the practice of the parties to these contracts over the past "23 to 59 years," strongly supported the position of the publisher, id. at 459-60. Accordingly, the Court held for the publisher.

If this same approach had been taken here, the Panel would necessarily have found for Stolt, since, as the Panel itself noted, Stolt presented uncontested evidence that the clauses here in question had never been the subject of class action arbitration. See Award at 6. The inference is irresistible, therefore, that Evans, if it is relevant here at all, is inconsistent with the Panel's conclusion, rather than consistent with it. Because, however, the

-7-

Panel no more analyzed the specific issues here under New York law than under maritime law, they entirely ignored New York case law far more directly in point.

For example, in Salvano v. Merrill, Lynch, Pierce, Fenner & Smith, Inc., 85 N.Y.2d 173 (1995), "the issue on [the] appeal [was] whether Supreme Court had the authority to order the parties to proceed [to expedited arbitration] absent any provision explicitly authorizing expedited arbitration in the parties' [arbitration] agreement." Id. at 177.

> The short answer to that contention is that arbitration agreements are contracts and must be interpreted under the accepted rules of contract law. The court's role is limited to interpretation and enforcement of the terms agreed to by the parties; it does not include the rewriting of their contract and the imposition of additional terms. To read into the [arbitration contract here, via indirect references] a provision authorizing compulsory expedited arbitration would be to fundamentally modify the terms of the parties' contract and force respondent to arbitrate in a manner contrary to the agreement to which it has assented.

Id. at 182 (citations omitted). Similarly, in Cullman Ventures, Inc. v. Conk, 252 A.D.2d 222 (N.Y. App. Div. 1998), the First Department held that "courts may not consolidate arbitrations in contravention of the parties' agreement even if consolidation would ensure a more economical proceeding.... A court's failure to give effect to provisions in separate agreements contemplating separate arbitrations is an unauthorized reformation of these contacts." See also, e.g., World Bus. Ctr., Inc. v. Euro-American Lodging Corp., 309 A.D.2d 166, 172 (N.Y. App. Div. 2003); Wallace Indus. v. Salt City Energy Venture, L.P., 233 A.D.2d 543, 545 (N.Y. App. Div. 1996); Continental

Energy Assocs. v. Asea Brown Boveri, Inc., 192 A.D.2d 467, 468 (N.Y. App. Div. 1993).

This is consistent, moreover, with New York's historically narrow view of what can be read into a contract by implication. See generally Nissho Iwai Eur. v. Korea First Bank, 99 N.Y.2d 115, 122 (2002); Trustees of Freeholders & Commonalty v. Jessup, 173 N.Y. 84, 90 (1903); Fesseha v. Td Waterhouse Investor Servs., 193 Misc. 2d 253, 256 (N.Y. Misc. 2002).[3]

Much, if not all, of this was forcefully brought to the Panel's attention by Stolt (albeit more as general principles than as a matter of New York law). See, e.g., Stolt's Arb. Opp. at 8 ("It is a fundamental rule of contract interpretation that when contracts are silent on an issue, no agreement has been reached. The failure of a contract to include such a term ... means that the parties did not intend to include it."); Award at 6-7 (summarizing extrinsic evidence supporting Stolt's position). But the Panel, because it did not make any choice-of-law analysis, failed to recognize how strongly Stolt's position accorded with New York law.

Thus, even if the governing law here is New York law (as opposed to general maritime law), the result would still be that the Panel acted in manifest disregard of the applicable law, and, in so doing, impermissibly "fashion[ed] a new contract under the guise of

---

[3] At most, as noted above, the New York courts have occasionally found that silence may, in context, create an ambiguity; but that, as also noted above, simply opens the door to extrinsic evidence, which here strongly supports Stolt's position.

contract construction." Slatt v. Slatt, 64 N.Y.2d 966, 967 (1985).[4] Such manifest disregard of the applicable law compels the Court to vacate the Award.

Accordingly, the Partial Final Clause Construction Award is hereby vacated, and the case is remanded to the Panel for proceedings consistent with this Opinion and Order.

SO ORDERED.

                                                     _____
                                                     JED S. RAKOFF, U.S.D.J.

Dated: New York, New York
       June 26, 2006

---

[4] Because of this conclusion, the Court need not reach Stolt's alternative arguments for vacatur.